**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Case No. 17-cr-00343-PWG** |
| **JOSHUA WAYNE WILCOM** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendant Joshua Wayne Wilcom's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Def.'s Mot., ECF No. 62. Mr. Wilcom is currently incarcerated at USP Yazoo City where he is serving a 120-month sentence for distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). Judgment, ECF No. 61. Mr. Wilcom pleaded guilty and was sentenced pursuant to Fed. R. Crim. P. 11(c)(1)(C) on April 3, 2019. *Id.* In light of the pandemic and the potential impact it will have on his health conditions, Mr. Wilcom requests that the Court either release him with an added period of home confinement or partially reduce his sentence. Def.'s Mot. Mem., 1-2. The Government opposes Mr. Wilcom's motion for the reasons explained below. I have reviewed all the materials[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons discussed below, Mr. Wilcom's motion is DENIED.

**BACKGROUND**

On August 21, 2018, Mr. Wilcom entered a Rule 11(c)(1)(C) plea to a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), which prohibits the distribution of controlled substances. Plea Agreement, ECF Nos. 36, 37. On April 3, 2019, Mr. Wilcom was sentenced to 120-months—the maximum sentence allowable under the plea agreement. Judgment, ECF No. 59; Plea Agreement,

---

[1]   The motion is fully briefed. *See* Def.'s Mot., ECF No. 64; Resp., ECF No. 72; Reply, ECF No. 75.

ECF No. 37. Mr. Wilcom has currently served about 50% of his sentence, and his projected release date is August 2, 2025. Resp., ECF No. 72, Exhibit 3.

Joshua Wayne Wilcom began selling what he believed was heroin in 2015 to support his own drug habit. Plea Agreement, ECF No. 37, Stip. of Facts. On April 17, 2016, officers pulled Mr. Wilcom over and found heroin in his car and on his person. *Id.* On April 26, 2016, Clinton Edwards, noted as "Victim 1" purchased heroin from Mr. Wilcom. *Id.* Mr. Edwards was found deceased on April 27, 2016; cause of death was later determined as fentanyl intoxication. *Id.* In a later interview with law enforcement, Mr. Wilcom stated that "he thought he was selling Victim 1 heroin, but would not be surprised if it turned out to be fentanyl, given its strength." *Id.*

Text messages received and sent by Mr. Wilcom also indicated that he knew the heroin was cut with fentanyl; specifically, a text sent to Mr. Edwards that said "B careful with [this] shit to no joke" and a text that he received saying "this shit sent me to the hospital for five [hours]. My heart stopped. I'm really lucky." *Id.*

As stated in his motion, Mr. Wilcom suffers from hypertension, obesity, and is a smoker. Mr. Wilcom also suffers from a heart condition called subaortic stenosis which requires him to receive biyearly echocardiogram and electrocardiogram. These comorbidities could increase the risk of severe illness or long-term side effects should Mr. Wilcom contract COVID-19. Notably, Mr. Wilcom contracted COVID-19 in December 2020, was asymptomatic, and recovered from the virus. Def.'s Mot., ECF No. 64, Exhibit 11.

As Mr. Wilcom points out, and the Government does not refute, only one electrocardiogram was performed on Mr. Wilcom during his imprisonment and no echocardiogram

has been performed. Def. Mot., ECF No. 64, Exhibit 5. At FCC Yazoo City, Mr. Wilcom and 2833 other inmates have received vaccinations for COVID 19.[2]

Although the Government recognizes that Mr. Wilcom has likely established an extraordinary and compelling reason, they contend that an early release would fail to afford adequate deterrence, fail to reflect the seriousness of the offense, and fail to provide just punishment. Resp., ECF No. 72, p. 19. The Government concedes that Mr. Wilcom has exhausted all administrative remedies. *Id.* at p. 17, n. 6.

## DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. High,* 997 F.3d 181, 185 (4th Cir. 2021). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, Mr. Wilcom requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.[3] The First Step Act permits a defendant to petition a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the Bureau of Prisons ("BOP") received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3)

---

[2] Fed. Bureau of Prisons, COVID-19 Vaccine Implementation (2022).
[3] The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the BOP. In 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the Court to act on a motion for compassionate release filed by a defendant.

consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

## I.     Administrative Exhaustion

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied. As Mr. Wilcom stated in his motion, the Warden of USP Yazoo City received a request for reduction in sentence on November 3, 2020 and 30 days has since passed. Def.'s Mot., ECF No. 64, p. 3; Def.'s Mot., ECF No. 64, Exhibit 2. The Government agrees that Mr. Wilcom has exhausted his administrative remedies. Resp., ECF No. 72, p. 15, note 6.

## II.    Extraordinary and Compelling Reasons

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has found that there is no applicable policy statement that governs a defendant's motion for compassionate release. *High*, 997 F.3d at 186 (citing *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020)). Additionally, I join with the majority of courts in finding that 18 U.S.C. § 3582(c)(1)(A)(i), as amended, grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, Criminal No. ELH-18-72, 2020 WL 2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). As the Fourth Circuit observed, district courts have discretion to independently assess whether circumstances

meet the extraordinary and compelling threshold. *McCoy*, 981 F.3d at 281-82. More specifically, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citing *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). However, while not binding, the Sentencing Commission's policy statements may provide useful guidance. *Id.* at 279 (citing *United States v. Bryant*, Crim. No. 95-202-CCB-3, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020)).

The Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 offer guidance here. Section 1B1.13 recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018, including the statement that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G § 1B1.13(2). The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C); *see also McCoy*, 981 F.3d at 280-81.

Mr. Wilcom argues that his congenital heart condition, coupled with a myriad of underlying medical concerns, provides for extraordinary and compelling reasons for a sentence reduction. Def.'s Mot., ECF No. 64, p. 3. Mr. Wilcom also notes that if released, he would aid his brother who has been diagnosed with ALS and act as a caretaker for his nieces and nephews. *Id.* at 13.

The Fourth Circuit has noted that "COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." *High*, 997 F.3d at 185. Thus, a petitioner can present an extraordinary and compelling reason related to COVID-19. *Id.* The district courts have discretion

to determine how to resolve such motions. *Id.* Judges in this Court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where defendants have serious medical problems that placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, Case No. 13-cr-46-PWG, 2020 WL 4748462, at *4 (D. Md. Aug. 17, 2020) (citing cases in this Court and other courts, and the application to multiple serious conditions); *but see United States v. Taylor*, No. 17-cr-0268-PWG, 2020 WL 6322620 (D. Md. Oct. 28, 2020), *appeal dismissed*, No. 20-7632, 2021 WL 1784092 (4th Cir. Jan. 13, 2021) (finding that hypertension and high BMI were not sufficient to warrant prisoner's release when the spread of coronavirus in his BOP facility was under control, and prisoner did not show that he would not receive appropriate treatment at his BOP facility, or a nearby medical facility if he were to contract the virus).

Additionally, the judges of this Court have dealt with increased rates of COVID-19 inoculation differently. *Compare United States v. Gregory*, No. CR SAG-13-0034, 2021 WL 1909605, at *5 (D. Md. May 12, 2021) (concluding that the petitioner's COVID-19 vaccination removed his pulmonary-related conditions from the category of risk constituting an "extraordinary and compelling reason"), *and United States of America v. Dion Alexander, Defendant*., No. CR RDB-16-364, 2021 WL 2661395, at *3 (D. Md. June 29, 2021) (taking into account falling COVID-19 infection figures and rising vaccinations when denying that petitioner had "extraordinary and compelling" reasons for release), *with United States v. Spriggs*, No. CR CCB-10-354, 2021 WL 1856667, at *3 (D. Md. May 10, 2021) (finding that petitioner's receipt of one vaccination shot did not greatly decrease the court's concern regarding his vulnerability to COVID-19 when he had underlying medical conditions and there are new variants of COVID-19).

Therefore, this Court does take vaccination status into account when evaluating a motion for compassionate release.

Vaccines are effective at preventing COVID-19, but because effectiveness is not guaranteed and there are unknowns regarding the extent and duration of the vaccine's protection, there may still be concern for particular individuals' increased risk of severe illness, even if fully vaccinated. *See Spriggs*, 2021 WL 1856667, at *2–3 (noting that "a vaccine does not negate that [the defendant's] underlying health conditions make him eligible"). It is impossible to predict the impact of the various COVID-19 vaccines on future strains of this virus, just as it is impossible to predict the impact of COVID-19 on Mr. Wilcom's specific medical issues. Certainly, the situation regarding COVID-19 is rapidly evolving, and new information about the virus and risk factors must be taken into account, as well as the changing conditions at prison facilities, for better or worse.

Here, Mr. Wilcom's heart condition and other underlying health conditions weigh in favor of his motion for compassionate release. The CDC and courts in this district have found that a history of smoking, heart problems, hypertension, and obesity make a person more at risk for severe medical consequence if they contract COVID 19. *See People with Certain Medical Conditions*, CDC (Feb., 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (noting that heart conditions, hypertension, obesity, and a history of smoking make a person "more likely to get very sick from COVID-19"); *United States v. White*, Crim. No. CCB-09-369, slip op. at 2 (D. Md. July 10, 2020) (finding that hypertension, obesity, and heart disease constitute extraordinary and compelling reasons); *United States v. Griffin*, Crim. No. ELH-12-003, slip op. at 14 (D. Md. Dec. 22, 2021).

Though the CDC classifies a Body Mass Index (BMI) of 25kg/m$^2$ as overweight, I found in *United States v. Waugh-Hixon* that an inmate who was in her late thirties and did not fall within a high-risk group, but had a BMI of 40, did not present extraordinary and compelling circumstances. No. 19-cr-137-PWG, slip op. at 3 (D. Md. Oct. 12, 2021). Similarly, Mr. Wilcom is also in his thirties. However, unlike Ms. Waugh-Hixon, Mr. Wilcom's BMI of 28.9 is coupled with a severe medical condition. Mr. Wilcom's diagnosis of subaortic stenosis weighs more towards a finding of a serious medical condition.

Mr. Wilcom notes that he suffers from a subaortic stenosis that required open-heart surgery when he was a child. Def.'s Mot., ECF. No. 64, p. 4. According to the Adult Congenital Heart Association, even if the defect is diagnosed and treated in childhood, "as a person gets older, the condition can get worse." Naser M. Ammash, *Subaortic Stenosis*, Adult Congenital Heart Ass'n, https://www.achaheart.org/your-heart/educational-qas/types-of-heart-defects/subaortic-stenosis/. The condition requires Mr. Wilcom to see a cardiologist and receive both an echocardiogram and electrocardiogram every two years. Def.'s Mot., ECF No. 64, Ex. 4. The American Heart Association cautions those with high blood pressure (hypertension) and congenital heart defects that they may "face an increased risk for complications if they become infected with the COVID-19 virus." Eduardo Sanchez, *Coronavirus Precautions for Patients and Others Facing Higher Risk*, Am. Heart Ass'n (Apr. 15, 2020), https://www.heart.org/en/coronavirus/coronavirus-covid-19-resources/coronavirus-precautions-for-patients-and-others-facing-higher-risks. Thus, as the Government concedes, Mr. Wilcom's medical condition does present extraordinary and compelling circumstances.

The Government argues that because Mr. Wilcom has already contracted and recovered from the coronavirus, his medical concerns hold less weight. I disagree. As I stated in *United States*

*v. Heyward*, "a secondary contraction of COVID-19 is possible." No. 17-cr-527-PWG, slip op. at 2 (D. Md. June 30, 2020). The CDC, in fact, has warned that "reinfections do occur after COVID-19." *Reinfections and COVID-19*, CDC (Jan. 20, 2022), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html#:~:text=Reinfection%20with%20the%20virus%20that,do%20occur%20after%20COVID%2D19. Because Mr. Wilcom could recontract the virus, his medical concerns are still relevant. However, the Government's argument concerning vaccinations is compelling. USP Yazoo City has currently vaccinated 2965 inmates and 466 staff members. *COVID-19 Vaccine Implementation*, Fed. Bureau of Prisons (Mar. 11, 2022), https://www.bop.gov/coronavirus/. As of March 2022, no inmates at USP Yazoo City are infected with COVID-19, although two inmates have died. *Id.* Therefore, as vaccination campaigns continue the risk of contracting the virus is lower than it was a year ago.

Mr. Wilcom also argues that if he were released, he would serve as a caretaker for his brother's children. Def.'s Mot., ECF No. 64, p. 13. Mr. Wilcom's brother was recently diagnosed with amyotrophic lateral sclerosis, more commonly known as ALS. *Id.* Comment C of Section 1B1.13 notes that extraordinary and compelling circumstances would be akin to "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver." FSG § 1B1.13, Cmt. (C)(i), (ii). In *United States v. Gregory*, Judge Gallagher held that Mr. Gregory's argument that he needed to take care of his mother did not constitute extraordinary and compelling family circumstances because "it [was] not clear from the record that there is no other caregiver available to fill that role." 538 F. Supp. 3d 562, 569 (D. Md. 2021). Here, mention is made of Mr. Wilcom's brother's condition, but nothing in the record indicates that no other caregiver would be available for the children. Additionally, Mr. Wilcom

presents no situation similar to those mentioned in the comments of Section 1B1.13. Therefore, Mr. Wilcom's arguments for extraordinary family circumstances do not weigh in favor of his motion.

Mr. Wilcom's subaortic stenosis and other underlying conditions do put him in a high-risk group. Because recontraction of COVID-19 could severely and adversely affect Mr. Wilcom, I find that his medical condition presents compelling and extraordinary circumstances for release. However, other conditions must be met in order for this motion to be granted.

**III.    Sentencing Factors**

A finding of "compelling and extraordinary reasons" is a necessary but not sufficient condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

The nature and circumstances of the offense are especially tragic in this case. Before the arrest that has led to his current incarceration, Mr. Wilcom was apprehended with heroin on April 17, 2016. Resp., ECF No. 72, p. 9-10. In exchange for engaging in controlled buys with law enforcement and a commitment to stop using, Mr. Wilcom was not charged with a drug-related offense at the time. *Id.* at 10. However, nine days later Mr. Wilcom sold heroin to Clint Edwards who died of fentanyl poisoning the morning after. Plea Agreement, ECF No. 37, Stip. of Facts.

Mr. Wilcom's statement that he would "not be surprised" if the heroin he sold Clint Edwards was cut with fentanyl is particularly troubling. *Id.*

Here, the Government argues that the current 120-month sentence properly reflects the seriousness of the offense, provides just punishment, and will deter other individuals from becoming user-dealers. Resp., ECF No. 72, p. 19. I agree. Clint Edwards died as a result of Mr. Wilcom's knowing actions. As the Government points out, the "defendant knowingly took the risk that his drugs would indeed kill one of his customers and further knew that the particular drugs he sold Clint Edwards were strong and very likely contained fentanyl." *Id.* Additionally, Mr. Wilcom had been given a chance to aid law enforcement and stop using heroin, but instead chose to continue to sell narcotics less than two weeks later. Mr. Wilcom was also warned via text that the heroin being purchased had made a friend's "heart stop." Therefore, the first sentencing factor weighs against granting the motion.

In considering the sentencing guidelines, the Government aptly points out that Mr. Wilcom was originally set to be sentenced to 240 months. However, the plea entered into by Mr. Wilcom and accepted by this court presented a sentencing range between five to ten years. During sentencing, I stated that I could not agree to the minimum five-year sentence because it was not sufficient and not a deterrent. Resp., ECF No. 72, Ex. 1. I instead sentenced Mr. Wilcom to the maximum 120 months. Judgment, ECF No. 59. Mr. Wilcom has served about 50% of his sentence, or about five years. At thirty years old, Mr. Wilcom is set to be released on August 2, 2025. Given the seriousness of his offense and the need for deterrence, I believe the 120-month sentence to deter is still needed.

Mr. Wilcom argues that his completion of non-residential drug treatment programs, his lack of disciplinary infractions, and his initiative in taking online courses shows that he has genuine

remorse and is dedicated to rehabilitation. *Id.* at 12. I congratulate Mr. Wilcom on his commitment and his achievements since being incarcerated, but I note now what I noted when I first sentenced Mr. Wilcom: "I am convinced that there is a possibility that you will succeed in what you do . . . but I must also deter those people right now getting text messages like that." Judgment, ECF No. 59. In short, my sentencing was and still is meant to deter those like Mr. Wilcom who receive a message (which stated that use of the heroin made his heart stop) from selling heroin for their personal gain or benefit.

Considering all of the circumstances, I find that granting release at this time would be inconsistent with the sentencing factors set forth in § 3553(a). The seriousness of the offense is undisputed and the consequences stemming from Mr. Wilcom's actions are endured by Clint Edwards's family. The circumstances surrounding the events in April show that Mr. Wilcom failed to heed warnings given to him by law enforcement and his own friends. Finally, I find that the reasons I found a five-year sentence insufficient to deter others from dealing fentanyl-laced heroin persist today. Therefore, the motion is denied.

## CONCLUSION

The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Mr. Wilcom faces based on his heart problem and other comorbidities. However, the Court must also consider the low levels of infection as USP Yazoo City, the seriousness of Mr. Wilcom's offense, the fact that his sentence was halved when he entered into a plea deal, and the life that was lost. Therefore, Joshua Wayne Wilcom's motion for compassionate release is DENIED.

**ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is this 15th day of March 2022, hereby ORDERED that Defendant's Motion for Compassionate Relief (ECF No. 62) is DENIED.

/S/
Paul W. Grimm
United States District Judge